**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

**CRIMINAL NO. 1:06CR255**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **VS.** | ) | **O R D E R** |
| | ) | |
| | ) | |
| **JONATHAN ANTHONY LEE TORRES** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Defendant's motion for a new trial.  Both parties have briefed their respective positions, and the matter is now ripe for ruling.

## I.  BACKGROUND

The Defendant was charged in a one count bill of indictment with possession of ammunition by a person previously convicted of a crime punishable by more than one year imprisonment, in violation of 18 U.S.C. § 922(g)(1).  *See* **Bill of Indictment, filed October 3, 2006.**  Jury selection took place on January 8, 2007, with trial commencing on January 9, 2007. At trial, the Government's evidence revealed that on the night of

September 5, 2006, Defendant was stopped by law enforcement officials during a routine driver's license checkpoint. Defendant was initially uncooperative with the officers and, as a result, he was placed in handcuffs until the officers completed their search for weapons. A check of Defendant's identity revealed outstanding warrants which resulted in his arrest. During the search of Defendant's car, the officers discovered a backpack that contained a box of ammunition. According to the officers' testimony at trial, Defendant did not deny ownership of the backpack and referred to the backpack as "his." Defendant also stated he had previously been "caught" in possession of ammunition but never had charges filed against him for such possession. Upon being booked in jail following the arrest, Defendant told the officers that they had guns and drugs "in their face" but did not find them.

The Defendant's only witness to testify on his behalf at trial was Gail Barnette. She testified that she allowed Defendant to borrow the car and he was driving her car on the night in question. She also stated that she bought the box of ammunition found in the car at a flea market and, on the night Defendant was arrested, she had placed the box of ammunition in a

duffle bag. Despite this testimony, the jury returned a verdict of guilty against Defendant. ***See* Jury Verdict, filed January 9, 2007.**

Defendant now moves for a new trial based upon statements made by the Government's attorney to Barnette during cross examination. On the morning of her testimony, Barnette spoke with the Government's attorney regarding the substance of her testimony. According to Defendant, the prosecutor did not believe Barnette's statements given to him that morning and informed her that she could be charged with perjury if she lied during her testimony. ***See* Defendant's Motion for New Trial, filed January 12, 2007, at 1.** During cross examination, the Government's attorney questioned Barnette about the inconsistencies between what she said during their brief interaction that morning and her testimony at trial. ***See* Government's Response to Defendant's Motion for New Trial, filed January 22, 2007, at 3.** Barnette acknowledged the inconsistencies and explained that she altered her testimony because she felt threatened by the prosecutor during their earlier conversation. *Id*. In response, the prosecutor asked Barnette whether he told her that he thought she was lying that morning, the reasons he did not believe her, that if he could prove she was lying he would charge her with perjury, and that he simply

wanted her to tell the truth.  *Id.*  Barnette answered in the affirmative to each of these questions.  *Id.*

As a result of this interaction at trial, Defendant alleges the Government's attorney "stated in open court and in the presence of the jury that Defendant's sole and exculpatory witness was in his opinion 'not telling the truth' and likely committing 'perjury.'"  **Defendant's Motion, *supra.***  According to Defendant, the Government was able to discredit his only exculpatory witness in the eyes of the jury by using these inconsistencies which were a direct result of the prosecutor's threatening demeanor toward Barnette.  *Id.*  Defendant argues that the statements made by the prosecutor during cross examination of Barnette "effectively deprived [him] of a fair trial" because the essential factual issue determined by the jury rested upon the credibility of Barnette's testimony.  **Defendant's Memorandum in Support of Motion for New Trial, filed January 12, 2007, at 1-2.**  Defendant, therefore, asserts the Government's actions at trial sufficiently prejudiced him to warrant a new trial.

## II.  STANDARD

Rule 33 of the Federal Rules of Criminal Procedure states, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  The decision to grant a new trial is within the sound discretion of the district court, and the court "'should exercise its discretion to award a new trial sparingly.'" *United States v. Smith*, 451 F.3d 209, 216-17 (4th Cir.), *cert. denied*, 127 S. Ct. 197 (2006) (quoting *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003)); *see also United States v. Tucker*, 376 F.3d 236, 238 (4th Cir. 2004).

"In reviewing a claim of prosecutorial misconduct, we review the claim to determine whether the conduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *United States v. Scheetz*, 293 F.3d 175, 185 (4th Cir. 2002) (quoting *United States v. Morsley*, 64 F.3d 907, 913 (4th Cir.1995)).  "The test for reversible prosecutorial misconduct generally has two components: that (1) the prosecutor's remarks and conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial."

***United States v. Golding***, 168 F.3d 700, 702 (4th Cir. 1999) (internal

quotations omitted). The Fourth Circuit has further stated,

> [i]n evaluating the question of prejudice, we have noted that a
> number of factors are relevant, namely: (1) the degree to which
> the prosecutor's remarks had a tendency to mislead the jury
> and to prejudice the defendant; (2) whether the remarks were
> isolated or extensive; (3) absent the remarks, the strength of
> competent proof introduced to establish the guilt of the
> defendant; (4) whether the comments were deliberately placed
> before the jury to divert attention to extraneous matters; (5)
> whether the prosecutor's remarks were invited by improper
> conduct of defense counsel; and (6) whether curative
> instructions were given to the jury.

***Scheetz***, 293 F.3d at 185-86 (citing ***United States v. Wilson***, 135 F.3d

291, 299 (4th Cir.1998)).


## III. ANALYSIS

It is well settled that while it is "permissible, indeed it [is] good

advocacy, for the government to stress to the jury the inconsistencies and

improbabilities in [a witness's] testimony[,]" it is improper for counsel to

express an "opinion as to the veracity of a witness." ***United States v.***

***Moore***, 710 F.2d 157, 159 (4th Cir. 1983). Said more simply, the Fourth

Circuit has "recognized that it is highly improper for the government to refer

to a defense witness as a liar." ***United States v. Moore***, 11 F.3d 475, 481

**(4ᵗʰ Cir. 1993).** However, a warning against the consequences of perjury, either express or implied, is not *per se* governmental misconduct. ***See Bank of Nova Scotia v. United States*, 487 U.S. 250, 262 (1988) (the Supreme Court held the government had not improperly prejudiced the defendant's ability to receive a fair trial where a government attorney told a witness's attorney that if the witness testified for a defendant "all bets were off" regarding the witness's potential criminal charges. As the Court stated, "[t]he witness may have felt threatened by the prosecutor's statement, but his subjective fear cannot be ascribed to governmental misconduct and was, at most, a consideration bearing on the reliability of his testimony.");** *see also* ***United States v. Washington*, 398 F.3d 306, 310 (4ᵗʰ Cir.),** *cert. denied*, **545 U.S. 1109 (2005) ("the prosecutor's statement that [a witness] possibly faced prosecution for perjury . . . by repudiating his earlier statements was, in these circumstances, the act of a prudent prosecutor.").**

Under the circumstances of the present case, and considering the legal standard set out above, it is clear to the undersigned that the Government's attorney did not engage in prosecutorial misconduct during

his cross examination of Barnette. No improper remarks were made by the prosecutor during trial regarding Barnette. His attempt to impeach Barnette's testimony through the introduction of prior inconsistent statements was permissible under Rule 613 of the Federal Rules of Evidence. And, although Defendant asserts the source of Barnette's inconsistent statements was the prosecutor's "threatening" demeanor toward her, the Court simply cannot find grounds for a new trial based upon a particular witness's subjective reaction to what was, in this case, a reasonable and responsible warning against perjury. ***See Bank of Nova Scotia*, *supra*.** Furthermore, the only reason the term "perjury" was mentioned at trial was in response to Barnette's accusation that the Government's attorney was threatening her. His subsequent questioning of Barnette was not an attempt to mislead the jury, but instead was done in an attempt to clarify the circumstances to the jury. Finally, this case is distinguished from other examples of prosecutorial misconduct because the prosecutor never directly stated to the jury that Barnette was, in fact, lying and/or committing perjury. ***See, e.g., Moore*, 710 F.2d at 159 (reviewing comments made by prosecutor during closing argument); *Scheetz*, 293 F.3d at 185-86 (analyzing prosecutor's closing rebuttal**

**argument).**  During closing argument, the Government's attorney noted the inconsistencies of Barnette's testimony, which is completely acceptable; however, the only time he gave a mere hint as to his opinion of Barnette's veracity was during cross examination when he attempted to clarify a prejudicial accusation made by the witness about him.  Under these circumstances, the Court does not find the Government's attorney acted improperly during his cross examination of Barnette.

Even were the Court to find the Government's attorney engaged in improper conduct during trial, the Court would find that such conduct did not prejudice the Defendant.  As stated above, it is clear that any comments made by the prosecutor regarding the veracity of Barnette's testimony were isolated, were not misleading to the jury, and were not "deliberately placed before the jury to divert attention to extraneous matters[.]"  *Scheetz***, 293 F.3d at 185-86.**  Furthermore, considering "the strength of competent proof introduced to establish the guilt of the defendant" at trial, the undersigned finds Defendant was not prejudiced by any allegedly improper comments made by the government's attorney.  *Id.*

Accordingly, because the Government's attorney did not make improper statements concerning Defendant's witness, nor did such

statements prejudice Defendant's ability to receive a fair trial, the

Defendant's motion is denied.


## IV.  ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for a New

Trial is hereby **DENIED.**

Signed: January 25, 2007

Lacy H. Thornburg
United States District Judge